# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

DANNY RAY LEE                           CIVIL ACTION NO. 07-0339

VS.                                     JUDGE MELANÇON

BURL CAIN, WARDEN                       MAGISTRATE JUDGE METHVIN

## REPORT AND RECOMMENDATION

Petitioner, Danny Ray Lee,  is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola, where he is serving the life sentence imposed following his 1995 second degree murder conviction in the Sixteenth Judicial District Court, St. Mary Parish.  On February 23, 2007, his attorney, James E. Boren,  filed the instant petition for writ of *habeas corpus* (28 U.S.C. §2254) attacking that conviction. [doc. 1] On the same date petitioner filed a Motion to Hold Habeas Corpus Petition in Abeyance until pending post-conviction proceedings in the Louisiana courts are resolved. [doc. 2] On May 14 and 15, 2007 petitioner filed a Supplemental Petition for Writ of Habeas Corpus and a Motion to Withdraw the Motion to Hold Habeas Corpus Petition in Abeyance. [docs. 5 and 6]

These matters have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d).

2

### *Background*

The petition, the supplemental petition, the accompanying memoranda of law,  and exhibits, along with the presumptively reliable  published jurisprudence of the State of Louisiana establish the following relevant chronology of events:

### A. The Trial

1. A unanimous jury convicted petitioner of second degree murder on April 5, 1995. [doc. 1, Exhibit 7]

2. On May 3, 1995 petitioner was sentenced to serve life without benefit of parole, probation, or suspension of sentence and his motion for reconsideration of sentence was denied. [*id*., Exhibit 8] On the same date his motion for appeal was granted. [*id*., Exhibit 9]

3. On August 17, 1995 petitioner, through court-appointed counsel,  filed a designation of Assignments of Error setting forth two Assignments – "The state failed to present sufficient evidence to sustain the defendant's conviction as charged beyond a reasonable doubt." and, "The trial court erred in not fully instructing the jury as to special defense jury instruction." [*id*., Exhibit 11]

### B. The Appeal to the First Circuit Court of Appeals

4. On December 8, 1995 petitioner's court-appointed counsel filed a Motion for Extension of Time to File Appellant's Brief. His Motion was granted and the return date of December 11, 1995 was extended to January 9, 1996. [*id*., Exhibit 10]

5. Notwithstanding this extension, his court-appointed appeals counsel neglected to file a brief.  As a result, on August 19, 1996, the First Circuit Court of Appeals determined that petitioner had abandoned his appeal. The court performed a patent error review and, having

3

found no obvious error, affirmed petitioner's conviction and sentence in an unpublished opinion. [*State of Louisiana v. Danny Ray Lee*, No. 95-KA-2331 (La. App. 1 Cir. 8/19/1996) (unpublished) see also doc. 1-1, paragraphs 8-9; doc. 1, Exhibit 12] [1]

6. Petitioner did not seek further direct review in the Louisiana Supreme Court or the United States Supreme Court. [doc. 1-1, paragraphs 9(g) and (h)]

### C. First Pro Se Application for Post-Conviction Relief in the Sixteenth Judicial District Court

7. On May 7, 1997 petitioner filed a *pro se* Application for Post-Conviction Relief in the Sixteenth Judicial District Court. This application raised eleven specific grounds for relief.  [doc. 1-1, paragraph 11(a)[2]] On  September 9, 1997 this application was denied in the District Court. [See doc. 1-1, paragraph 11(a)(8)] Petitioner apparently did not seek further review of the denial of his first application for post-conviction relief.

### D. Second Pro Se Application for Post-Conviction Relief

8. On October 29, 1997 petitioner filed a second application for post-conviction relief in the Sixteenth Judicial District Court which raised a single claim for relief concerning racial discrimination in the grand jury selection process. On April 6, 1998 his application was denied. On May 26, 1998 petitioner filed an application for writs in the First Circuit Court of Appeals

---

[1] Petitioner did not provide a complete copy of the unpublished opinion of the First Circuit. Specifically, petitioner did not include the certificate of mailing by the Clerk of Court. See Uniform Rules Courts of Appeal Rules 2-16.4 ("In every case, one copy of the ... unpublished opinion, when rendered, shall be delivered or mailed to ... all appeal counsel of record..."), 2-16.5 ("The clerk of this court shall file a certificate in the record showing the date on which and to whom the copy of opinion was delivered or mailed."),  2-17.1 ("Notice of judgment of a Court of Appeal shall be delivered personally or mailed by the clerk to all counsel of record..."), and 1-17.2 ("The clerk shall file a certificate in the record showing the date on which and the names of all parties or persons to whom the notice of judgment was delivered or mailed.") In the absence of any evidence to the contrary, it is assumed, for the purposes of this Report, that the court followed its own rules and mailed a copy of the unpublished opinion and/or notice of judgment to petitioner's court-appointed attorney on the same date that the opinion was rendered.

[2] Petitioner did not provide a copy of this pleading; nor has he specified the nature of the claims for relief.

4

under docket number 98-KW-1209. [doc. 1-1, paragraphs11(b) and (c)] On November 6, 1998 his writ application was denied.  On December 29, 1998 he filed a *pro se* writ application in the Louisiana Supreme Court which was assigned docket number 98-KH-3187. [doc. 1-1, paragraph 11(d)]

### E. Supplemental Counseled Application for Post-Conviction Relief in the Supreme Court

9. On April 9, 1999, petitioner, through counsel, Mr. Boren, filed a "Motion to Enrol and Motion for Extension of Time to File Supplemental Brief on Behalf of Appellant" in the Louisiana Supreme Court. That motion was granted on April 14, 1999 and counsel was given an additional period of time within which to file a supplemental writ application.

On June 14, 1999 counsel filed a pleading styled "Brief and Motion for Out-of-Time Appeal Supplementing Danny Ray Lee's Pro Se Application for Writ of Review on His Application for Post Conviction Relief" in the Louisiana Supreme Court.  [doc. 1, Exhibit 13 at p. 3]

On June 28, 1999 counsel  filed an identical pleading styled Supplemental Application for Post Conviction Relief and/or Petition for Out-of-Time Appeal in the Sixteenth Judicial District Court. [doc. 1, Exhibit 13]

On September 17, 1999 the Louisiana Supreme Court denied writs finding, "Relator's pro se claims lack merit, and counsel must initially raise his claim [for out-of-time appeal] in the district court. See La. C.Cr.P. art. 926(A); *State ex rel. Foret v. Cain*, 505 So.2d 1139 (La. 1987); see also *State v. Counterman*, 475 So.2d 336, 339-40 (La. 1985)."[3] *State of Louisiana ex rel.*

---

[3] La. C.Cr.P. art. 926(A) provides in relevant part, "An application for post conviction relief shall be by written petition addressed to the district court for the parish in which the petitioner was convicted..."

5

*Danny Ray Lee v. State of Louisiana*, 1998-3187 (La. 9/17/1999), 747 So.2d 561.

### F. First Counseled Application for Post-Conviction Relief (seeking Out-of-Time Appeal)

10. Notwithstanding the Supreme Court's rejection of his pro se and counseled claims, petitioner's counseled Application for Post-Conviction Relief  seeking an out of -time appeal remained viable in the District Court. On September 24, 1999, after a brief hearing, and over the State's objection, the District Court granted relief on petitioner's Application for Post-Conviction Relief seeking an out-of-time appeal. [doc. 1-1, p. 9]

### G. The Counseled "Out-of-Time" Appeal to the First Circuit Court of Appeals

11. In due course, petitioner's attorney filed the out-of-time appeal in the First Circuit Court of Appeals raising two Assignments of Error – erroneous jury instruction and ineffective assistance of counsel based on counsel's failure to object to the jury instruction, and, ineffective assistance of counsel based upon an alleged conflict of interest.

On February 16, 2001, the First Circuit Court of Appeals "conditionally affirmed" petitioner's conviction and sentence but remanded the case to the District Court "... for an evidentiary hearing on the issue of ineffectiveness of counsel due to conflict of interest." The court further instructed, "If the trial court finds merit to the claims, it should set aside the conviction and grant a new trial. [citations omitted] If the trial court does not find ineffective

---

In *State ex rel. Foret v. Cain, supra*, the Supreme Court denied a writ application seeking restoration of lapsed appeal rights and noted, "If relator wishes a determination of the merits of his claim that he was denied an appeal as a result of counsel's failure to act in accordance with his expressed desire to appeal, he should present that claim to the district court. Relator should use the uniform application for post conviction relief, as required by La.C.Cr.P. art. 926 D, and may wish to state in the application the reason why the claim was not included in his prior application. See, La.C.Cr.P. art. 930.4 F."

In *State v. Counterman*, 475 So. 2d at 339,  the Louisiana Supreme Court held that the appropriate procedural vehicle for a defendant to obtain an out-of-time appeal is an application for post conviction relief filed pursuant to La. C.Cr.P. arts. 924-930.7.

6

assistance, defendant may appeal from that ruling. In the absence of such an appeal, the conviction and sentence will be affirmed." *State of Louisiana v. Danny Ray Lee*, 2000-0183 (La. App. 1 Cir. 2/16/2001), 788 So.2d 452, 457. [see also doc. 1, Exhibit 14]

12. Petitioner applied for writs to the Louisiana Supreme Court on some unspecified date raising unspecified claims.[4] On March 30, 2001 his writ application was denied. *State of Louisiana v. Danny Ray Lee*, 2000-1611 (La. 3/30/2001), 788 So.2d 442.

**H. On Remand to the Sixteenth Judicial District Court**

13. On January 16, 2002 an evidentiary hearing was convened in the Sixteenth Judicial District Court. [doc. 1, Exhibit 16]

14.  In September, 2002, while the issue of conflict of interest was being litigated in the District Court on remand, petitioner, through counsel, filed a Motion for New Trial and in the Alternative to Expand the Scope of the Evidentiary Hearing on Remand to Allow Presentation of Evidence in Support of a Motion for New Trial. [doc. 1, Exhibit 15] Petitioner relied on a letter purportedly written by co-defendant Davey Coslow; in this letter Coslow recanted his trial testimony concerning petitioner's culpability in the homicide at issue. [doc. 1, Exhibit 1]

15. On June 24, 2003 a second evidentiary hearing was convened. [doc. 1, Exhibit 17] At the conclusion of that hearing, the District Judge found that the conflict of interest complained about had an adverse impact on the representation of petitioner and therefore the court granted a new trial. [*id.*, p. 91][5]

---

[4] Petitioner did not provide a copy of the writ application.

[5] The court, however, denied petitioner's motion for a new trial based on newly discovered evidence and noted, "With regard to the issue of the newly discovered evidence, being the letter and the statements of Mr. Coslow to Mr. Bulla, in order to grant a new trial based on newly discovered evidence, it has to be evidence that would affect the outcome of the case and it has to be reliable. Based on what was presented here today, that being the testimony of

7

***I. The State of Louisiana's Writ Application to the First Circuit Court of Appeals***

16. The State of Louisiana applied for writs of review and *certiorari* in the First Circuit Court of Appeals. [doc. 1, Exhibit 18]

17. On March 22, 2004 the First Circuit granted the State's writ application, stating,

The trial court erred in granting Lee's motion for a new trial. Considering the evidence produced at the evidentiary hearings and the cross-examination of Davey Coslow at Danny Lee's trial, it does not appear that Craig Colwart's representation of Lee and his previous representation of Coslow adversely affected his perfromance at Lee's trial. See *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).  *State of Louisiana ex rel. Danny Lee v. State of Louisiana*, No. 2003-KW-1955 (La. App. 1 Cir. 3/22/2004) (unpublished). [doc. 1, Exhibit 19]

***J. Petitioner's Counseled Writ Application to the Louisiana Supreme Court***

18. On some unspecified date petitioner filed a writ application in the Louisiana Supreme Court. On November 24, 2004, the Supreme Court denied writs without comment. *State of Louisiana ex rel. Danny Lee v. State of Louisiana*, 2004-0999 (La. 11/24/2004), 888 So.2d 226. [doc. 1, Exhibit 20]

***K. Second Counseled Application for Post-Conviction Relief***

19. No other post-conviction or collateral attacks remained  pending after November 24, 2004, until November 22, 2005 when petitioner, through Mr. Boren, filed yet another Application for Post-Conviction Relief in the Sixteenth Judicial District Court raising claims of newly discovered evidence, violation of the right of confrontation, and ineffective assistance of counsel. [doc. 1, Exhibits 21-22] On April 19, 2006 the application was denied without a hearing

---

Mr. Bulla, and the testimony and lack of testimony by Mr. Coslow, I don't find the evidence that would be available if a new trial would be granted, would be reliable or possibly even admissible at that trial. So, I will deny the motion for new trial based on newly discovered evidence." [doc. 1, Exhibit 17 at p. 89]

8

by the District Court. [doc. 1, Exhibit 24] On May 11, 2006 petitioner's counsel filed a pleading
styled, "Danny Lee's Objection to Judgement of April 19, 2006" and a Notice of Intent to Seek
Writs in the District Court [doc. 1, Exhibits 25 and 26]

     20. On June 12, 2006 petitioner, through counsel, filed his application for remedial and/or
supervisory writs in the First Circuit Court of Appeals. [doc. 1, Exhibit 27] On August 7, 2006
the First Circuit Court of Appeals denied writs. *State of Louisiana v. Danny Ray Lee*, No. 2006-
KW-1109 (La. App. 1 Cir. 8/7/2006) (unpublished). [see doc. 1, Exhibit 28][6]

     21. On September 7, 2006, petitioner, through counsel filed a writ application in the
Louisiana Supreme Court. [doc. 1, Exhibit 29] When he filed the instant petition, that matter was
still pending before the Supreme Court. [doc. 1-1, p. 10] However, on May 11, 2007 the Supreme
Court denied writs. *State of Louisiana v. Danny Ray Lee*, 2006-KP-2234 (La. 5/11/2007), —
So.2d —. [doc. 5-3]

**L. Petition for Writ of Habeas Corpus – 28 U.S.C. §2254**

     22. On February 23, 2007, petitioner, through counsel, filed the instant petition for writ of
*habeas corpus*. [doc. 1-1] On the same date, petitioner filed a pleading entitled, "Petitioner's
Motion to Hold Habeas Corpus Petition in Abeyance." [doc. 2-1] On May 14, 2007 petitioner
filed a Supplemental Petition for Writ of Habeas Corpus. [doc. 5] Noting that the Louisiana

---

[6] Again, petitioner did not provide a complete copy of the unpublished order of the First Circuit. Specifically,
petitioner did not include the certificate of mailing by the Clerk of Court. See Uniform Rules Courts of Appeal Rules
2-16.4 ("In every case, one copy of the ... unpublished opinion, when rendered, shall be delivered or mailed to ... all
appeal counsel of record..."), 2-16.5 ("The clerk of this court shall file a certificate in the record showing the date on
which and to whom the copy of opinion was delivered or mailed."),  2-17.1 ("Notice of judgment of a Court of
Appeal shall be delivered personally or mailed by the clerk to all counsel of record..."), and 1-17.2 ("The clerk shall
file a certificate in the record showing the date on which and the names of all parties or persons to whom the notice
of judgment was delivered or mailed.") In the absence of any evidence to the contrary, it is assumed, for the purposes
of this Report, that the court followed its own rules and mailed a copy of the unpublished opinion and/or notice of
judgment to petitioner's court-appointed attorney on the same date that the judgment was rendered.

9

Supreme Court had ruled on his previously pending writ application, petitioner then filed a

Motion to Withdraw the Motion to Hold Petition in Abeyance. [doc. 6]

### *Law and Analysis*

### *1. Timeliness of the Petition – General Considerations*

This petition was filed after the effective date of the Anti-Terrorism and Effective Death

Penalty Act of 1996 (AEDPA).[7]  Therefore, the court must apply the provisions of AEDPA,

including the timeliness provisions. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir. 8/9/1999); *In*

*Re Smith,* 142 F.3d 832, 834, citing *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138

L.Ed.2d 481 (1997).

Title 28 U.S.C. §2244(d)(1)(A) was amended by AEDPA to provide a one-year statute of

limitations for the filing of applications for writ of *habeas corpus* by persons in custody pursuant

to the judgment of a State court.  This limitation period generally runs from "...the date on which

the judgment became final by the conclusion of direct review or the expiration of the time for

seeking such review..." 28 U.S.C. §2244(d)(1)(A).[8]

However, the statutory tolling provision set forth in 28 U.S.C. § 2244(d)(2)  provides that

the time during which a properly filed application for post-conviction relief was pending in state

---

[7] The effective date of the AEDPA (110 Stat. 1214) was April 24, 1996.

[8] Nothing in the record before the court suggests that any State created impediments prevented the filing of the petition. Further, nothing in the record suggests that petitioner is relying on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review.  Finally, nothing in the record suggests that the factual predicate of the claims presented was only recently discovered.  [See 28 U.S.C. § 2244(d)(1)(B), (C), and (D)].

Petitioner implies that the Coslow letter [doc. 1, Exhibit 1] is "newly discovered evidence." However, the state court record submitted by the petitioner establishes that Mr. Coslow wrote the letter and gave the letter to Mr. Lee sometime between Lee's trial in April, 1995, and July 31, 1995 [doc. 1, Exhibit 4] the date that Coslow pled guilty to manslaughter and while both were still prisoners in the St. Mary Parish Jail. [doc. 1, Exhibit 17, pp. 32-35]

10

court is not counted toward the limitation period.  *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir.

1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Any lapse of

time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted

against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154

F.3d 196, 197 (5th Cir.1998).  Federal courts may raise the one-year time limitation *sua sponte.*

*Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

Thus, in order to determine whether a petition is timely, a federal court must generally

determine: (1) "... the date upon which the judgment became final by the conclusion of direct

review or the expiration of the time for seeking such review..." (§2244(d)(1)(A)); (2) "[t]he time

during which a properly filed application for State post-conviction or other collateral review

[was] pending..." (§2244(d)(2)); and, (3) the date upon which petitioner filed his petition for writ

of *habeas corpus* in the United States District Court.

## 2. Finality of Judgment under §2244(d)(1)(A)

Petitioner timely appealed his conviction and sentence, and submitted two Assignments

of Error.  However, his court-appointed attorney failed to file a brief in support of the

Assignments of Error.  Consequently, the Assignments were deemed abandoned and the Court of

Appeals was limited to a patent error review. Following such a review, petitioner's conviction

and sentence were affirmed by the First Circuit Court of Appeals on August 19, 1996.[9] [doc. 1,

Exhibit 12]  Petitioner did not seek further direct review in the Louisiana Supreme Court or the

United States Supreme Court. [doc. 1-1, paragraphs 9(g) and (h)].

---

[9]  As noted above, the effective date of the AEDPA (110 Stat. 1214) was April 24, 1996; thus, petitioner's judgment
of conviction became final after the effective date of the AEDPA.

11

Under Louisiana law, petitioner had a period of 30 days within which to seek further direct review in the Louisiana Supreme Court.[10]  For AEDPA purposes, petitioner's judgment of conviction and sentence "became final by ... the expiration of the time for seeking [direct] review" [28 U.S.C. § 2244(d)(1)(A)], on or about September 18, 1996.   See *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003) (if defendant stops the appeal process before entry of judgment by the court of last resort, the conviction becomes final when the time for seeking further direct review in the state court expires.)  Under 28 U.S.C. § 2244(d)(1) he had one year, or until September 18, 1997 to file his federal *habeas* petition.

### 3. Tolling of the Limitations Period

Petitioner filed his first *pro se* Application for Post-Conviction Relief on May 7, 1997. That matter remained pending in the district court until September 9, 1997 when the trial judge denied relief. [doc. 1-1, paragraph 11(a)] Under the provisions of 28 U.S.C. §2244(d)(2), petitioner was able to toll the AEDPA limitations period during the pendency of his first *pro se* Application for Post-Conviction Relief, however, by the time he filed this Application, a period of 231 days (or 7 months and 21 days) of the one-year AEDPA limitations period had lapsed between September 18, 1996,  the date that his judgment of conviction became final under the

---

[10] Louisiana Supreme Court Rule X, §5(a) provides, "An application seeking to review a judgment of the court of appeal ... shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal ..." Petitioner did not provide a complete copy of the unpublished opinion of the First Circuit. Specifically, petitioner did not include the certificate of mailing by the Clerk of Court. See Uniform Rules Courts of Appeal Rules 2-16.4 ("In every case, one copy of the ... unpublished opinion, when rendered, shall be delivered or mailed to ... all appeal counsel of record..."), 2-16.5 ("The clerk of this court shall file a certificate in the record showing the date on which and to whom the copy of opinion was delivered or mailed."),  2-17.1 ("Notice of judgment of a Court of Appeal shall be delivered personally or mailed by the clerk to all counsel of record..."), and 1-17.2 ("The clerk shall file a certificate in the record showing the date on which and the names of all parties or persons to whom the notice of judgment was delivered or mailed.") In the absence of any evidence to the contrary, it is assumed, for the purposes of this Report, that the court followed its own rules and mailed a copy of the unpublished opinion and/or notice of judgment to petitioner's court-appointed attorney on the same date that the opinion was rendered. Thus, petitioner had 30 days from that date within which to seek further direct review in Louisiana's Supreme Court.

12

AEDPA and May 7, 1997 the date he filed his first Application for Post-Conviction Relief.   As noted above, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period. *Villegas,* 184 F.3d 467, citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir.1998).

_____Petitioner filed his second *pro se* Application for Post-Conviction Relief on October 29, 1997 [doc. 1-1, paragraph 11], and, as will be shown hereinafter, he was able to toll the limitations period again until November 24, 2004 when the Louisiana Supreme Court denied writs and thus terminated petitioner's out-of-time appeal.[11] [See *State of Louisiana ex rel. Danny Ray Lee v. State of Louisiana*, 2004-0999 (La. 11/24/2004), 888 So.2d 226 (doc. 1, Exhibit 20)] However, an additional period of 50 days (or 1 month and 20 days) elapsed between the date that his first *pro se* Application for Post-Conviction Relief was denied (September 9, 1997) and the date that he filed his second *pro se* Application for Post-Conviction Relief (October 29, 1997).

Thus, by the time petitioner filed his second *pro se* Application for Post-Conviction Relief, a total of 281 un-tolled days had elapsed.

No state post-conviction or collateral attacks were pending between November 24, 2004 (when the out-of-time appeal process was terminated) and November 22, 2005, the date petitioner's attorney filed the second counseled Application for Post-Conviction Relief . [doc. 1,

---

[11] Petitioner's second *pro se* Application for Post-Conviction Relief was filed on October 29, 1997. It was denied by the District Court on April 6, 1998, however, it remained pending until September 17, 1999 when the Louisiana Supreme Court denied writs. *State of Louisiana ex rel. Danny Ray Lee v. State of Louisiana*, 1998-3187 (La. 9/17/1999), 747 So.2d 561.  However, in June, 1999, while that matter was still pending before the Louisiana Supreme Court, petitioner's attorney filed the first counseled Application for Post-Conviction Relief in the District Court. That post-conviction pleading sought an "out-of-time" appeal. [doc. 1, Exhibit 13] Petitioner was granted an out-of-time appeal on September 24, 1999 and that out-of-time appeal process remained pending in the Louisiana courts until November 24, 2004 when the Louisiana Supreme Court denied petitioner's writ application. *State of Louisiana ex rel. Danny Ray Lee v. State of Louisiana*, 2004-0999 (La. 11/24/2004), 888 So.2d 226. [doc. 1, Exhibit 20]

Exhibits 21-22] Therefore, by the time counsel filed the second counseled application, a period of 363 un-tolled days had elapsed since the conclusion of his out-of-time appeal process on November 24, 2004.  Thus, by the time this second counseled Application for Post-Conviction Relief was filed, 644 days had elapsed and petitioner's AEDPA limitations period had long expired.

### 4. The Effects of Petitioner's "Out-of-Time" Appeal

Petitioner implies that when the Louisiana court granted his request for an out-of-time appeal, petitioner's AEDPA clock was "restarted" as of the date upon which the out-of-time appeal process concluded.  Stated another way, petitioner suggests that his conviction did not become "final" until the conclusion of the out-of-time appeal process, and, since the one-year limitations period codified at § 2244(d) commences on "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...", petitioner had a full year reckoned from the date that the out-of-time appeal process concluded within which to file his petition.

However, the Fifth Circuit has rejected such an argument. In *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004), *certiorari denied*, 541 U.S.1032, 124 S.Ct. 2099, 158 L.Ed.2d 714 (2004), the court examined the effects of an out-of-time appeal on the AEDPA's timeliness provisions.

Salinas was convicted of murder and sentenced to life imprisonment in a Texas court. Like Louisiana, Texas provides for an appeal of right to an intermediate court of appeals and thereafter, the opportunity to seek discretionary review in Texas's court of last resort, the Court of Criminal Appeals.  Salinas's conviction was affirmed by the intermediate court of appeals on July 20, 2000.  However, his attorney failed to apply for discretionary review in the Court of

14

Criminal Appeals within the thirty day time period provided by law.

Under Texas law, discretionary review by the Court of Criminal Appeals is considered to be part of the direct review process.  The process ends either when discretionary review is denied or when the time for filing the petition for review lapses.  Thus, Salinas's judgment of conviction became final in August 2000, when he failed to timely file his petition for discretionary review. Under the timeliness provisions of the AEDPA, he had one year, or until August 2001 to file for federal *habeas* relief.  Sometime during the summer of 2001, Salinas filed a state *habeas* application which, under § 2244(d)(2),  tolled the limitations period during its pendency.  His state *habeas* ceased to be "pending" in March,2002 when the Court of Criminal Appeals denied relief.  At that point, Salinas had only eighteen days remaining of the one-year AEDPA limitations period.  Unfortunately, he failed to file his federal *habeas* until late April and it was therefore dismissed as time-barred by the United States District Court in November 2002.

Meanwhile, and unbeknownst to the District Court, the Texas Court of Criminal Appeals had, in October 2002, reconsidered Salinas's state *habeas* petition and granted him the right to file an out-of-time petition for discretionary review *sua sponte*.[12]

On appeal, Salinas argued that (1) when Texas's high court granted him the right to file an out-of-time petition for discretionary review, it restored him to the position he was in when he first had the right to seek discretionary review; and, (2) since he still had the right to file for discretionary review, he should be considered to be in the midst of the direct review process; and,

---

[12] As noted by the Fifth Circuit, quoting the Texas' Court's order,  "The effect of this was to 'return [Salinas] to the point at which he can file a petition for discretionary review .... For the purposes of the Texas Rules of Appellate Procedure, all time limits shall be calculated as if the Court of Appeals' decision had been rendered on the day the mandate of the Court of Criminal Appeals issues.' *Ex Parte Salinas*, No. 74,462 at 2 (Tex. Crim. App. 2002).  Thus, under state law, Salinas was restored to the position of a recently convicted felon, eligible to pursue a form of direct review in the Court of Criminal Appeals. " *Salinas v. Dretke*, 354 F.3d at 428.

15

(3) therefore, the AEDPA statute of limitations could not have lapsed because the period could begin only on the conclusion of direct review.  Or, as this argument was summarized by the Fifth Circuit, "Thus, Salinas argues, his conviction was 'de- finalized,' and the statute of limitations – though legitimately initiated in August 2000 – should be deemed to have begun again with the rejection of the PDR in January 2003." *Id.* at 429.

The Fifth Circuit rejected Salinas's argument:

> <u>On its face, AEDPA provides for only a linear limitations period, one that starts and ends on specific dates, with only the possibility that tolling will expand the period in between</u>. See § 2244(d)(1), (2). So long as the petitioner is being held pursuant to the same state court judgment, <u>nothing in AEDPA allows for a properly initiated limitations period to be terminated altogether by collateral state court action. Rather, the statutory framework only provides for the tolling of limitations during the pendency of state collateral review</u>. See § 2244(d)(2).
>
> Thus, the issue is not whether the Court of Criminal Appeals' action revitalized Salinas's limitations period, but rather whether the existence of that potential relief prevents the limitations period from starting to run until after that level of appeal has been denied. That is to say, we need to determine whether, in Texas, the mechanism by which Salinas obtained the right to file an 'out-of-time' PDR is part of the direct or collateral review process. If that relief comes as a result of direct review, there would be no basis for limitations even to begin running until the Court of Criminal Appeals has finalized the judgment by declining to grant relief on that level of appeal. If, on the other hand, an 'out-of-time' PDR is awarded only as a result of the collateral review process, limitations is tolled merely while the petitioner seeks to obtain that relief.  *Id.* at  429-430 (emphasis supplied)

Thereafter, the Fifth Circuit analyzed Texas law and concluded that the Court of Criminal Appeals was authorized to grant Salinas his out-of-time petition only through the collateral review process of the Texas *habeas* statute.

Thus, the court concluded,

As a result, when a petitioner convicted in the Texas system acquires the right to

16

file an 'out-of-time' PDR, the relief tolls AEDPA's statute of limitations until the
date on which the Court of Criminal Appeals declines to grant further relief, but it
does not require a federal court to restart the running of AEDPA's limitations
period altogether.... Therefore, because Salinas's right to file the 'out-of-time'
PDR is necessarily the product of state habeas review, it does not arise under the
'direct review' procedures of the Texas judicial system. Accordingly, the Court of
Criminal Appeals' granting of Salinas's writ does not alter the fact that limitations
set forth in 28 U.S.C. § 2244(d)(1)(A), properly began to run on August 21, 2000,
and fully lapsed on March 31, 2002.  *Id.* at 430-431.

This reasoning is applicable to the instant case.  In Louisiana the only mechanism which

can be employed to reinstate lapsed appeal rights and thus grant an out-of-time appeal is the

Application for Post-Conviction Relief.  See *State v. Counterman*, 475 So.2d 336 (1985).  In

*Counterman*, the Louisiana Supreme Court held:

La.C.Cr.P. Art. 915 requires the court to order an appeal when a motion for appeal
is made in conformity with Articles 912, 914 and 914.1. However, when a
defendant fails to make a motion for appeal within the time provided in Article
914, he loses the right to obtain an appeal by simply filing a motion for appeal in
the trial court. This is not because the trial court has been divested of jurisdiction,
as was held in *State v. Braxton*, 428 So.2d 1153 (La.App. 3rd Cir.1983), but
because the conviction and sentence became final when the defendant failed to
appeal timely.

After the time for appealing has elapsed, the conviction and sentence are no
longer subject to review under the ordinary appellate process, unless the defendant
obtains the reinstatement of his right to appeal.  *State v. Counterman*, 475 So.2d at
338. (emphasis supplied)

And, concluded the Court, "...the appropriate procedural vehicle for a defendant to seek

the exercise of his right to appeal, after the delay provided in Article 914 has expired, is an

application for post conviction relief pursuant to Articles 924-930.7." *Id.* at 339. (emphasis

supplied.)

In this case, petitioner's out-of-time appeal was granted only after he asserted that right

17

through Louisiana's collateral review process, the Application for Post-Conviction Relief.[13]  He, like Mr. Salinas, was not thereby entitled to have his conviction "de-finalized."

The collateral review process, started with the filing of petitioner's Application for Post-Conviction Relief seeking an out-of-time appeal, proceeded through his out-of-time appeal before the First Circuit and through the hearing in the District Court on remand,  and concluded when the Louisiana Supreme Court denied petitioner's writ application.

### 5. Equitable Tolling

Finally, petitioner's pleadings and exhibits do not suggest  extraordinary circumstances such as to warrant the application of  equitable tolling thus exempting petitioner's claims from dismissal under §2244(d)(1).  AEDPA's one-year limitation period is subject to equitable tolling but, only in "rare and exceptional cases." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999); see also *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir.1999) (asserting that courts must "examine each case on its facts to determine whether it presents sufficiently 'rare and exceptional circumstances' to justify equitable tolling" (quoting *Davis*, 158 F.3d at 811)).

Neither unfamiliarity with the legal process (whether the unfamiliarity is due to illiteracy or any other reason), ignorance of the law, nor even lack of representation during the applicable filing period merits equitable tolling. See *Turner v. Johnson*, 177 F.3d 390, 291 (5th Cir.1999); see also *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir.1991) (age discrimination

---

[13] That principle was recognized by the Louisiana Supreme Court in its September 17, 1999 writ denial, "... counsel must initially raise his claim [for an out-of-time appeal] in the district court. See La. C.Cr.P. art. 926(A); *State ex rel. Foret v. Cain*, 505 So.2d 1139 (La. 1987); see also *State v. Counterman*, 475 So.2d 336, 339-40 (La. 1985)." *State of Louisiana ex rel. Danny Ray Lee v. State of Louisiana*, 1998-3187 (La. 9/17/1999), 747 So.2d 561.

18

case).

The circumstances alleged herein are not extraordinary enough to qualify for equitable tolling under § 2244(d)(1). "Equitable tolling applies principally where the plaintiff is <u>actively misled by the defendant</u> about the cause of action <u>or is prevented in some extraordinary way from asserting his rights.</u>" *Coleman v. Johnson*, 184 F.3d 398, 402 (1999), *cert. denied,* 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000), (quoting *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir.1996) (emphasis supplied). The pleadings do not suggest that petitioner was "actively misled" nor do they suggest that he was prevented in any way from asserting his rights.  To the contrary, the record establishes that petitioner has been represented by counsel since April 9, 1999 when present *habeas* counsel enroled as counsel of record during the time that petitioner's second *pro se* application for post-conviction relief was pending before the Louisiana Supreme Court.  Counsel represented petitioner throughout the out-of-time appeal process and then inexplicably permitted over 362 days to elapse un-tolled between the date that the out-of-time appeal process concluded and the date he filed his ill-fated second counseled Application for Post-Conviction Relief.  Attorney error or neglect is not an extraordinary circumstance justifying equitable tolling. *In re Lewis*, — F.3d —, 2007 WL 1098434 (5th Cir. April 13, 2007); *United States v. Riggs*, 314 F.3d 796, 799 (5th Cir.2002);  *Fierro v. Cockrell*, 294 F.3d 674, 683 (5th Cir.2002), *cert. denied*, 538 U.S. 947, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003), (an attorney's erroneous interpretation of the limitations provision was not an excuse for timely filing a § 2254 petition); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir.2002), *cert. denied*, 539 U.S. 918, 123 S.Ct. 2277, 156 L.Ed.2d 136 (2003), ("mere attorney error or neglect" is not an "extraordinary circumstance" warranting equitable tolling); and *Moore v. Cockrell*,  313

F.3d 880 (5th Cir.2002), *cert. denied*, 538 U.S. 969, 123 S.Ct. 1768, 155 L.Ed.2d 526 (2003) (an

attorney's delay in notifying a petitioner of the result of his direct appeal did not warrant

equitable tolling).

Further, petitioner's claims of "actual innocence" are unavailing. A claim of actual

innocence "does not constitute a 'rare and exceptional' circumstance, given that many prisoners

maintain they are innocent." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir.2000); see also

*Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir.2002); *United States v. Riggs*, 314 F.3d 796, 800

n. 9 (5th Cir.2002). In addition, Petitioner has not shown that he has <u>reliable new evidence that</u>

<u>establishes his actual innocence</u>. See *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130

L.Ed.2d 808 (1995). To establish the requisite probability of actual innocence, a *habeas corpus*

petitioner must support his allegations with new, reliable evidence that was not presented at trial,

and he must show that it was "more likely than not that no reasonable juror would have convicted

him in the light of the new evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999)

(quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); accord

*Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir.2001); *United States v. Jones*, 172 F.3d 381, 384

(5th Cir.1999).

Here, petitioner relies on evidence previously rejected by the Louisiana court's as

unreliable. As shown above, at the conclusion of  the evidentiary hearing the trial court denied

petitioner's motion for a new trial based on newly discovered evidence and noted, "With regard

to the issue of the newly discovered evidence, being the letter and the statements of Mr. Coslow

to Mr. Bulla, in order to grant a new trial based on newly discovered evidence, it has to be

evidence that would affect the outcome of the case and it has to be reliable. Based on what was

20

presented here today, that being the testimony of Mr. Bulla, and the testimony and lack of testimony by Mr. Coslow, I don't find the evidence that would be available if a new trial would be granted, would be reliable or possibly even admissible at that trial. So, I will deny the motion for new trial based on newly discovered evidence." [doc. 1, Exhibit 17 at p. 89] That finding of unreliability is amply supported by the testimony of Coslow and Bulla . [doc. 1, Exhibit 17] Finally, a review of the evidence adduced at the preliminary hearing [doc. 1 Exhibit 3], especially the testimony of Coslow's wife, Sherry Coslow, further refutes petitioner's claims of innocence. Considering Louisiana's law of principals, La. 14:24[14] Coslow's otherwise unreliable recantation [doc. 1, Exhibit 1] does not serve to exculpate petitioner.

A litigant seeking the benefits of equitable tolling has the burden to show entitlement to such tolling. See *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.2002). Since petitioner has not carried his burden to show that equitable tolling is warranted, the court should refuse to apply equitable tolling in this case.

**ACCORDINGLY,**

**IT IS ORDERED** that Petitioner's Motion to Withdraw [doc. 6] Motion to Hold Habeas Petition in Abeyance [doc. 2] is **GRANTED**; and,

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be **DENIED AND DISMISSED WITH PREJUDICE**  because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d) and he is not eligible for the benefits of equitable tolling.

---

[14] The statute provides, "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."

21

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on June 1, 2007.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)